578 A.2d 441

David FERRICKS, Margaret Ferricks, and Daryl Ferricks, a Minor, Jeffery Ferricks, a Minor, Christine Ferricks, a Minor, and Richard Ferricks, a Minor, by David Ferricks, and Margaret Ferricks, Their Father and Mother and Guardians, Appellants,

v.

RYAN HOMES, INC., St. Regis Corporation, Chembond Corporation a Wholly–Owned Subsidiary of Texaco Chemical Company; Borden Inc., Reichold Chemicals, Inc., Reichold, Ltd., and Potlatch Corporation.

Superior Court of Pennsylvania.

Argued April 5, 1990.

Filed July 19, 1990.

Thomas Bell Rutter, Philadelphia, for appellants.

Edward Craig Schmidt, Pittsburgh, for St. Regis Corp., appellee.

Robert J. Luddy, Pittsburgh, for Potlatch Corp., appellee.

Before DEL SOLE, TAMILIA and FORD ELLIOTT, JJ.

DEL SOLE, Judge:

This is an appeal from an award of Summary Judgment entered as a result of the applicability of the "Construction Projects" Statute of Repose, 42 Pa.C.S.A. § 5536. In an opinion written for purposes of appeal, the trial court advised this court that upon "subsequent evaluation of all relevant statutory and judicial authority as well as the legislative history of the Statute of Repose, and considered rationale of the Supreme Court of Pennsylvania," the improvidence of the court's action was revealed. The trial court sought reversal of its decision. We too accept the trial court's conclusion that the Statute of Repose was inapplicable to the Appellees in this case, and we reverse the award of Summary Judgment.

Appellants commenced this action seeking to recover for personal injuries and property damage they allegedly suffered as a result of exposure to formaldehyde vapors from the building materials of their home. Named as defendants were the general contractor, Ryan Homes, as well as several manufacturers of plywood and plywood adhesive, a material alleged to contain the formaldehyde resin in question. The trial court granted a motion for Summary Judgment in favor of Ryan Homes accepting the contractor's argument that the plaintiffs' cause of action was extinguished under 42 Pa.C.S.A. § 5536 since the home in question was built more than twelve years prior to the commencement of this action. Although the remaining defendants joined in Ryan

Homes' motion, the court was unwilling to dismiss them prior to the completion of discovery. Later, by consent of the parties, certain defendants were dismissed from the case. Once discovery was complete the remaining defendants, Potlatch Corporation and St. Regis Corporation, who are plywood board manufacturers, renewed their motions for summary judgment. The grant of their motion is the subject of this appeal.

The statute in question, 42 Pa.C.S.A. § 5536 provides in pertinent part:

*Construction projects*

(a) *General rule.*—Except as provided in subsection (b), a civil action or proceeding brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property must be commenced within 12 years after completion of construction of such improvement to recover damages for:

(1) Any deficiency in the design, planning, supervision or observation of construction or construction of the improvement.

(2) Injury to property, real or personal, arising out of any such deficiency.

(3) Injury to the person or for wrongful death arising out of any such deficiency.

This statute has been said to not merely bar a litigant's right to a remedy, as a statute of limitations does, but it completely abolishes certain causes of action relating to real property improvements 12 years after completion of the improvement. *Mitchell v. United Elevator Co., Inc.,* 290 Pa.Super. 476, 434 A.2d 1243 (1981). In a case such as this where more than 12 years have passed since the completion of the structure, any action seeking to recover for personal or property injuries arising out of an alleged deficiency in design, planning or construction of an improvement to the real property will be disallowed. Thus, the question in this case becomes whether the Appellees, who are manufacturers of plywood which was alleged to have been sold to Ryan

Homes for incorporation into Appellants' house, designed, planned or constructed an "improvement to real property."

Appellees argument that the manufacturers of the plywood should be entitled to the protection of the statute of repose can be simply stated. They submit that the term improvement as it relates to property rights refers to those items, such as the plywood here, which become so affixed to the property that they cannot be removed without material injury to the real estate or to themselves. Although we cannot disagree that the plywood did become an integral part of the structure built by Ryan Homes, we do not find this factor determinative of the question of whether the plywood was *itself* the improvement.

The Courts of this Commonwealth have considered the applicability of § 5536, however, none of these decisions have addressed a situation such as that presented here. In two instances the courts have concluded that the construction of an elevator was the "construction of any improvement to real property" which would relieve its designer and installer from liability when more than 12 years had passed since installation. *See Fetterhoff v. Fetterhoff,* 354 Pa.Super. 438, 512 A.2d 30 (1986), and *Mitchell v. United Elevator,* 290 Pa.Super. 476, 434 A.2d 1243 (1981). This same conclusion was reached with respect to manufacturers of a skydome installed on the roof of a high school in *Catanzaro v. Wasco Products, Inc.,* 339 Pa.Super. 481, 489 A.2d 262 (1985) and with respect to a party who approved the design of an electrical panel board in *Goodrich v. Luzerne Apparel Manufacturing Corp.,* 356 Pa.Super. 148, 514 A.2d 188 (1986).

On two occasions our supreme court examined § 5536. In *Freezer Storage v. Armstrong Cork Company,* 476 Pa. 270, 382 A.2d 715 (1978) the court considered the constitutionality of § 5536. More recently in *McCormick v. Columbus Conveyer Co.,* 522 Pa. 520, 564 A.2d 907 (1989) the applicability of the 12 year statute of repose was questioned where an individual was injured in the belt conveyor of a coal delivery system installed in a university powerhouse.

There the court concluded that the manufacturer of the system was engaged in the design of an improvement to the real property which would afford him the benefit of § 5536.

The instant case is based on a different factual predicate than those previously decided by the courts of this Commonwealth. Unlike the previous cases, here the defendants were producers or manufacturers of a product which was used as a material in construction. Because the material itself, the plywood, was at one point constructed by the Appellees and then incorporated into a structure, the Appellees would assert that this constituted the construction of an improvement entitling them to the protection of the statute of repose. We disagree. Appellees were not responsible for construction or design of an improvement. The plywood manufacturers were merely furnishing a material to be used in the construction of the actual improvement. The plywood was simply a component part of a wall or floor which eventually made up the improvement on the real estate.

In *McCormick v. Columbus Conveyor, supra,* the supreme court looked to the definition of the term "improvement" as it is found in *Black's Law Dictionary,* which defines it as:

[a] valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes....

*Id.,* 564 A.2d 909.

A multipurpose building material such as plywood, which is merely used as a component in the creation of a finished product, does not come within the definition of the term "improvement". As noted by the trial court in its opinion, the inclusion of a material such as plywood under the definition of an "improvement" would create internal inconsistency within the definition. The Honorable Livingstone M. Johnson commented in his opinion:

Inclusion of plywood or other fungibles as such 'valuable additions' creates internal inconsistency within the definition, inviting arbitrary distinctions between building materials used in original construction, such as the plywood here in question, and those used for 'mere repair or replacement.' While materials used in original construction might be deemed "improvements", the provisions of the definition as adopted clearly preclude the same treatment for those used in repair. A result which would so reward manufacturers based on the fortuity of inclusion of their product in original construction while denying protection for equally defective materials used thereafter is without logical foundation, and as such, could not reflect the intent of the legislature. Cf. *Zimmerman v. O'Bannon*, 497 Pa. 551, 442 A.2d 674 (1982).

The definition of the term improvement also caused Judge Johnson to observe that a building material such as plywood which is a single component of a greater whole is recognizable as some form of "improvement" only upon the application of "labor and capital" to create the construction of a structure or fixture. He accurately observed:

Any contrary finding would serve to advance the absurd result that building materials such as plywood, plate glass, aluminum sheeting or steel supports might be merely stock piled on a given piece of real estate and be thereby subject to inclusion under the Statute of Repose, as 'improvement[s] to real property.'

As noted by the trial court, the plywood was simply a component of a greater whole which upon its creation had a multiplicity of purpose. Plywood has many uses, only some of which are consistent with the construction of improvements on real property. In addition to its uses in building structures it could be used to build any number of items clearly unrelated to an improvement on real estate. Much like the cables of an elevator, the glass of a skydome and the individual wires of an electrical panel board, the panels of plywood are only parts of what may become a fixture; they alone are not the fixture. It is only the finished

product with its singular purpose of being integrated into a structure which constitutes the fixture.

In *Mitchell v. United Elevator Company, supra,* the installation of an elevator system was being considered. The trial court ruled that the manufacturer could not avail itself of the bar against liability provided by the statute since "it simply supplied and installed the necessary elements for the elevator system as part of the overall construction of the complex. *"Id.* 434 A.2d at 1249. In reversing this decision the superior court stated:

> The lower court seems to be likening the building of an elevator system with all its myriad components, motors, cables, wiring and machinery to uncrating and plugging in a television set. The fact that the basic design of the elevator may be identical in different buildings does not render the elevator *system* any less an improvement to real estate. *Id.* (emphasis added).

Likewise in *Catanzaro v. Wasco Products, Inc.* this court recognized a skydome installed on the roof of a building as a fixture. A skydome, which was likened to a window by the court is a finished product which is uniquely suited to be included in the construction of a structure. A finished product such as window, skydome, or elevator is meant for use solely as a fixture, as an improvement to real estate. The individual component parts of these completed products do not have such a sole purpose. It is their purchaser who controls their use.

As we have stated, in *McCormick v. Columbus Conveyor Co.,* the supreme court's most recent decision concerning the Statute of Repose, the court was asked to consider the applicability of this provision to the designer and manufacturer of a coal delivery system. The court ruled that the statute was applicable since the defendant was "engaged in the design of an improvement to real property." *Id.* 564 A.2d 911. In reaching this determination, the court remarked:

> It is abundantly clear from the record that Columbus did more than supply a standard piece of equipment, indistin-

guishable from any other it mass-produced, that by chance became affixed to the University's property. Using specification and a general layout provided by Rust Engineering, Columbus devised a coal delivery system to be integrated into the construction of the new power plant that was uniquely suited to that site.

This passage calls attention to the distinction between products which are produced for incorporation into a finished product and the finished product itself which is designed to be included as a fixture or improvement in real estate. The individuals who provide these two distinct services can often be labeled as suppliers and builders. The *McCormick* court noted that in *Freezer Storage Inc. v. Armstrong Cork Co.*, it examined an argument that the statute distinguished between these two groups. Therein, the court accepted *arguendo* that the statute applied to builders but not suppliers and commented that such a distinction would be rationally based on real differences. The court noted that suppliers produce items in large quantities and can maintain quality control standards in the controlled environment of a factory. However, the only test available to a builder is one conducted over the years following construction. Thus, while the court did not decide whether suppliers could be entitled to the protection of the statute it did provide sound rationale for the ruling we make today.

The manufacturer of plywood, a building material with many distinct purposes, only one of which is to be used as a component in the construction of an improvement on real estate, is not entitled to the protection of the statute of repose. Merely because the purchaser of this product incorporated it into the design of a structure, should provide no insulation to its manufacturer who must make its product safe for this and all other potential uses. For these reasons we conclude that Summary Judgment was improperly entered in favor of Appellees.

Summary Judgment vacated. Case remanded for further proceedings. Jurisdiction relinquished.